## TWIN LAKES LAND & WATER CO. v. DOHNER.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1917.)

No. 2955.

1. APPEAL AND ERROR ⬦994(3)—REVIEW—CREDIBILITY OF WITNESSES.

Where, in a suit to rescind a contract for the sale of land, plaintiff and his associates, who were Ohio farmers, wholly ignorant of irrigation and its problems, testified that defendant's agents represented that defendant had water enough to supply its entire territory for several years, even though there should be no rain, and the trial judge evidently regarded them as thoroughly credible, the decree could not be disturbed, notwithstanding the claimed improbability that such a representation was made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3904-3905½.]

2. VENDOR AND PURCHASER ⬦33—FRAUD—CREATING FALSE IMPRESSION.

If, on a sale of land, defendant's agents, without any literal misstatement of fact, created in plaintiff's mind a false impression, and if they should have known that what they said would create such an impression, they must be deemed to have misrepresented, as though they had made an express misrepresentation.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–43, 66.]

3. CANCELLATION OF INSTRUMENTS ⬦24(3)—CONDITIONS PRECEDENT—NECESSITY OF RESTORING PROPERTY.

An actual return or tender of the property received, which is normally an essential prerequisite to an action at law to recover the consideration paid, is not necessary before bringing an action in equity to rescind, as plaintiff brings the controversy into court, and must undertake to perform whatever conditions the court may decide to be equitable, if it eventually declares the right of rescission.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 34-38.]

4. CANCELLATION OF INSTRUMENTS ⬦24(3)—CONDITIONS PRECEDENT—NECESSITY OF RESTORING PROPERTY.

Pending a suit to rescind a contract for the sale of land, it is not necessary that plaintiff should abandon the land and leave the buildings to destruction, and the land to be injured by nonuse, and it is enough if defendant, on performing his part of the decree of rescission, may receive back what he parted with, subject to any equitable adjustment that may be ordered.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 34-38.]

5. CANCELLATION OF INSTRUMENTS ⬦37(4)—PLEADING—OFFER TO RESTORE CONSIDERATION OR BENEFITS.

In a purchaser's suit to rescind a contract for the purchase of land, the bill should have expressly averred plaintiff's willingness to return the land and to accept all equitable conditions.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 68, 72, 73.]

6. EQUITY ⬦330(1)—PLEADING—WAIVER OF DEFECTS.

In a purchaser's suit to rescind a contract for the purchase of land, where there was no demurrer or motion to dismiss, relief could not be denied after a trial upon the merits, and the development of no obstacle

to the return of the property because the bill failed to allege plaintiff's willingness to return the property.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 660–662, 664–668, 671.]

7. VENDOR AND PURCHASER ⬤⟿119—RESCISSION BY PURCHASER—LACHES.

Where plaintiff was induced to buy land by various representations as to the supply of water for irrigation, a delay on his part in rescinding after the water had almost entirely failed, due to hopefulness and a hesitation to embark in litigation, did not bar rescission.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 212–214.]

8. VENDOR AND PURCHASER ⬤⟿43(1)—RESCISSION BY PURCHASER—DEFENSES.

Where plaintiff was induced to buy land by various representations as to the supply of water for irrigation, and after the supply of water had almost entirely failed he was induced to accept a new contract, which abated some interest and extended the payments, by misrepresentations that the obstacle to a supply of water was only temporary, he did not condone the original misrepresentations by the acceptance of such new contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 67.]

9. CANCELLATION OF INSTRUMENTS ⬤⟿37(1)—PLEADING—SUFFICIENCY.

In suing to rescind such contract, plaintiff should have set up the making of the second contract in continuation of the first, and should have alleged the grounds for rescinding the second as well as the first, and sought relief accordingly; but, as the changes made by the second contract were by way of concessions or extensions, the defect was not substantial.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–68, 71; Contracts, Cent. Dig. § 1196.]

10. COURTS ⬤⟿274—FEDERAL COURTS—DISTRICT IN WHICH SUIT MAY BE BROUGHT.

In an action by a citizen of Ohio, residing in the Southern district, against a corporation, a citizen and resident of Colorado, the federal court for the Southern district of Ohio had jurisdiction, if defendant was rightly served within that district.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814.]

11. CORPORATIONS ⬤⟿668(4)—FOREIGN CORPORATIONS—SERVICE OF PROCESS.

Service of process upon the vice president and general manager of a foreign corporation was sufficient, if he was within the district upon corporate business, and not merely in his personal capacity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2610.]

12. CORPORATIONS ⬤⟿669—FOREIGN CORPORATIONS—APPEARANCE AS WAIVER OF OBJECTIONS TO JURISDICTION.

Where, in an action against a foreign corporation, its attorney appeared on a motion for a preliminary injunction to prevent a sale of a contract and notes, and agreed to see that no transfer of the contract and notes were made, and thereby procured an order denying the injunction, this was a general appearance, and a waiver of any objection to the jurisdiction over the person.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2641, 2642.]

13. CORPORATIONS ⬤⟿669—FOREIGN CORPORATIONS—WITHDRAWAL OF APPEARANCE.

In an action against a foreign corporation, its attorney appeared on motion for a preliminary injunction on January 29th. Thereafter it entered a special appearance and filed a motion to quash the service, supported by affidavits tending to show that the officer upon whom service

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

was made was decoyed within the district by fraud. Plaintiff moved to strike such motion and affidavits, on the ground that the appearance on January 29th was a general appearance. The court so held, and overruled the motion to quash. Subsequently defendant appeared specially and moved for leave to withdraw the appearance of January 29th, supported by affidavits showing that no general appearance was intended, and that prior to January 29th it had not learned, and had no opportunity to learn, the facts as to the fraud. *Held,* that the denial of this motion was within the trial court's discretion, as the claim that it did not learn of the fraud until after January 29th should have been made before the hearing upon the motion to quash, and by way of reply to plaintiff's claim that the appearance of January 29th was a waiver of objections to the service of process.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2641, 2642.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by Warren Dohner against the Twin Lakes Land & Water Company. From a decree for plaintiff, defendant appeals. Affirmed.

C. A. Ballreich, of Pueblo, Colo., for appellant.
S. T. McPherson, of Cincinnati, Ohio, for appellee.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

DENISON, Circuit Judge. The appellant is a company owning a large tract of land in Colorado, and a water supply for irrigation purposes. It made a contract with the appellee to sell him a tract of this land upon deferred payments. He took possession, retained it for several years, and paid a part of the purchase price, and then he filed this bill in the court below, asking a rescission of the contract and return of the payments which he had made. He based this demand upon the claim that material facts had been misrepresented to him. The court below gave him a decree of rescission and for restitution, and the company prosecutes this appeal.

[1 2] 1. Upon the ultimate merits, the question whether there was real misrepresentation, we cannot disturb the decree of the trial court. The question was wholly one of credibility. Omitting a good many subjects within the realm of mere opinion or expectation, we find Dohner claiming that the company's agent represented that the company had in storage reserve, in certain lakes and reservoirs, water enough to supply its entire territory for a period of two or three years, even if there should be no rain, and that the land offered for sale was, therefore, absolutely certain of a sufficient supply of water at all times. Defendant's agents deny this statement, but concede that, if it was made, it was not true; indeed, they say that its very absurdity demonstrates that it could not have been made. If these negotiations had been between parties equally familiar with irrigated lands, and the troubles that develop in operating the best of them, we should hesitate to think that such a statement was made and relied upon; but Dohner was brought from Ohio to Colorado for the purpose of interesting him in such a purchase, he was wholly ignorant of irrigation and its problems, several Ohio farmers with him were equally ignorant, and it is not at all improbable that defendant's agents, without any

literal misstatement of fact, would have created in Dohner's mind the impression that they were claiming the existence of this quantity of reserve water, and should have known that what they said would create that impression, and so must be deemed to have misrepresented, in this respect, just as much as if they had used the very language charged against them. Dohner and his associates testified in open court before the trial judge; he evidently regarded them as thoroughly credible; and it cannot be doubted that they made their purchase and came away from Colorado with the understanding and belief that this representation had been made. The defendant's agents testified by deposition; but they had the right to testify orally at the trial, and they cannot complain if their deposition testimony did not convince the trial judge that Dohner and his witnesses are mistaken.

[3, 4] 2. Defendant insists that there was no sufficient rescission before or in connection with the beginning of suit. The land had been occupied by Dohner's tenant. Dohner brought this suit, and thereupon notified his tenant that this had been done, and that he (Dohner) would have nothing more to do with the land. The tenant remained in possession during the ensuing season, harvested what crops there were, and then abandoned the place. There is no proof that any portion of the crops was turned over to Dohner. The bill of complaint is silent as to possession. It does not tender back possession, or, in terms, offer to do so in connection with the desired decree of recission. It is clear enough that the case lacks that actual return or tender of the property received which is normally an essential prerequisite to an action at law to recover the consideration paid; but the same rule does not apply to an action in equity. By such an action in equity, the plaintiff brings the controversy into court, and must undertake to perform whatever conditions the court may decide to be equitable, if it eventually declares the right of rescission. Where the controversy relates to land, it is not necessary that plaintiff should abandon it pending suit and leave the buildings to destruction and the land to be injured by nonuse. It is enough, if the defendant, on performing his part of the decree of rescission, may receive back what he parted with, subject to any equitable adjustment that may be ordered. Neblett v. McFarland, 92 U. S. 101, 103, 23 L. Ed. 471; Thackrah v. Haas, 119 U. S. 499, 502, 7 Sup. Ct. 311, 30 L. Ed. 486.

[5, 6] The principle stated by this court in Mudsill Co. v. Watrous, 61 Fed. 163, 186, 9 C. C. A. 415, and in Alger v. Keith, 105 Fed. 105, 118, 44 C. C. A. 371, and by the Supreme Court in Shappirio v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419, does not apply at all where the vendee's later dealing with the property is not in silence and in acquiescence, but is after the commencement of a suit to rescind, and is only so far as necessary to prevent avoidable loss. The bill should have expressly averred the plaintiff's willingness to make this return and to accept all equitable conditions; but there was no demurrer or motion to dismiss, and after a trial upon the merits, and the development of no obstacle to the return of the property to the defendant, we cannot deny relief to plaintiff because his bill was insufficient in this respect.

[7-9] 3. It is insisted that Dohner, after discovery of the misrepresentation, reaffirmed the contract, or rather, made a new contract. The fact was that, during the first season, the water almost entirely failed. The defendant's agents explained this failure as due to temporary troubles in the irrigation supply, which troubles would at once be remedied, and a new contract of purchase was made, which abated some interest and extended the payments over a longer period. Dohner claims that misrepresentations, similar to the original ones, induced him to accept this new contract, and induced him to continue his efforts, and to continue payments for several years, before he finally became convinced of their falsity and determined to rescind. In his delay after the first year, we see only a hopefulness and a hesitation to embark in litigation, which are not sufficient to bar any relief to which he might otherwise be entitled. The making of the new contract in the first year stands upon different grounds. If he made that contract after he should have known of the falsity of the essential elements on which he now depends, he cannot now disaffirm; but it is not clear that he should be chargeable with this knowledge. He did know, of necessity, that the stated amount of water was not then available for use, but there was no compelling reason why he should not accept defendant's assurances that the obstacle was only temporary, and that the water was there in the reservoir lakes, and that only unexpected delay in dredging the outlet prevented obtaining the water. Under these circumstances, he cannot be charged with condoning the original misrepresentation. Here, again, the bill of complaint was informal. Dohner should have set up the making of the second contract in continuation of the first, and should have alleged the grounds for rescinding the second as well as the first, and sought relief accordingly; but we cannot consider this defect as very substantial. The changes made by the second contract were by way of concessions or extensions, and to treat it as a new contract, which could not be set aside, unless it was directly attacked, instead of being attacked as incidental to the original contract, would be too strict a reliance upon form.

[10, 11] 4. The defendant challenges the jurisdiction of the court below upon the ground that, as a corporation, it was not within the district. Plaintiff was a citizen of Ohio and a resident of the Southern district. Defendant corporation was a citizen and resident of Colorado. The court below, therefore, had jurisdiction, if the defendant was rightly served within the district. Service was made upon the vice president and general manager, and, if he was within the district upon corporate business, rather than in merely his personal capacity, there was jurisdiction. Connecticut Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Penn. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 48 L. Ed. 810. The manager claims that he was intending merely to pass through the district upon a personal and private journey from Colorado to New York, but that, by Dohner's procurement, he was decoyed to stop over upon a pretense that he could thereby do some business for his corporation, and that this false putting him in the position of doing corporate business within the district

should stand upon the same basis as decoying an individual into a foreign district.

The affidavits which were filed, in support of a motion to quash upon this ground, gave strong color to the claim. However, it appeared that the bill of complaint was filed and subpœna served on January 11th, and at the same time there was served a notice of motion for January 29th for preliminary injunction to prevent a sale of the contract and notes; that the officer who was served continued on his journey to New York, and sent these papers by mail to an attorney at Dayton, with instructions to do whatever was necessary, and to look into the question of jurisdiction; and that on the 29th this attorney appeared upon the motion for preliminary injunction, announced that he represented the defendant, and agreed to see to it that no transfer of the contract and notes was made, whereupon, and by an order reciting this appearance and agreement, the motion for injunction was denied. On March 2d this same attorney, with others, entered a special appearance and filed a motion to quash the service, supporting it by affidavits which tended to show the practice of deception in the matter of getting service. On March 5th plaintiff moved to strike from the files this motion and these affidavits, upon the ground that there had been a general appearance by defendant by reason of what happened upon the motion for preliminary injunction. On March 12th defendant's motion to quash and plaintiff's motion to strike came on to be heard, and the court denied the motion to quash, upon the ground that on January 29th there had been a general appearance which was a waiver of any question of jurisdiction over the defendant's person. The overruling of this motion to quash, and of the plea in abatement, raising the same question, is now alleged as error.

[12] We think the action of the court below right in this respect. Such an appearance as above recited, although upon a collateral matter, is a general appearance, which will be a waiver of any objection to the jurisdiction over the person. Great Lakes Co. v. Scranton Co. (C. C. A. 7) 239 Fed. 603, 605, —— C. C. A. ——; Central Co. v. McGeorge, 151 U. S. 129, 132, 133, 14 Sup. Ct. 286, 38 L. Ed. 98; In re Moore, 209 U. S. 490, 496, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; Erie R. R. v. Kennedy (C. C. A. 6) 191 Fed. 332, 334, 112 C. C. A. 76.

[13] A few days later, defendant, further specially appearing, made a motion for leave to withdraw the appearance of January 29th. This was supported by affidavits showing that no general appearance had been intended, and tending to show that prior to January 29th the defendant had not learned, and had had no opportunity to learn, the facts which gave a right to allege deceit in the matter of the service. This motion was denied. Upon the record as it is brought here, we are considerably impressed that there should have been a fuller inquiry into the question whether defendant's waiver of January 29th had been made in ignorance of the fraud alleged, and, if so, a full inquiry into the question of fact whether there had been such a fraud; but we cannot say that there was error in refusing leave to withdraw this appearance. This action was not beyond the limits of discretion.

Although defendant alleged that it had not learned of the fraud until after January 29th, it did not make this claim until after the hearing of March 12th. The claim should have been made before going to a hearing upon the motion to quash, and by way of reply to plaintiff's claim that the appearance of January 29th was a sufficient waiver. Defendant kept silent at this time, and did not dispute the natural inference that all material facts were known to it at once and before January 29th. When the later effort was made to save this point by a belated showing, it was well within the court's discretion to conclude that a fair opportunity had gone by, and that, if defendant deliberately chose to go to a hearing upon its motion to quash, relying solely upon its legal position that the appearance of January 29th was not a waiver, it had no absolute right to a further hearing on some ground then reserved, but later urged against the binding effect of the appearance.

Other assignments of error do not call for discussion. The decree is affirmed.