**ANDERSEN, MEYER & CO., Limited, v. FUR & WOOL TRADING CO. (D. BIEDERMANN), Limited.**

(Circuit Court of Appeals, Ninth Circuit. September 7, 1926. Rehearing Denied Oct. 11, 1926.)

No. 4781.

**1. Trusts ⬅110.**

Evidence *held* to sustain finding that defendant purchased furs taken from plaintiff's agent by robbery and assassination.

**2. Stipulations ⬅14(1)—Stipulation for sale by defendant of furs taken from plaintiff's agent by robbery and assassination held not admission by plaintiff of liability for purchase money and expenses of defendant.**

In suit for accounting for perishable furs belonging to plaintiff, bought by defendant from assassin and robber, stipulation for inventory and sale of furs by defendant *held* not an admission by plaintiff of liability for purchase money and expenses of defendant.

**3. Equity ☞44.**

Where case belongs to class of which equity court has jurisdiction, objection that plaintiff has adequate remedy at law will be disregarded.

**4. Equity ☞330(1).**

Absence in bill of offer to do equity is waived by failure to demur.

**5. Appeal and error ☞184—Objection that petition was insufficient and that plaintiff's remedy was at law will not be considered on appeal from decree of United States Court for China, where defendant participated in trial without objection.**

Where defendant participated in trial of suit for accounting in United States Court for China without objecting to form of action or jurisdiction, *held* that, since amount recoverable and manner of trial in such court would be same if action were at law, objection to sufficiency of petition and that plaintiff's remedy was at law will not be considered on appeal.

**6. Appeal and error ☞984(1).**

In absence of proof of error or abuse of discretion in disallowing cost bill, such ruling is not reviewable on appeal.

**7. Appeal and error ☞1013—Allowance to buyer of furs from assassin and robber of amounts paid for marketing furs will not be disturbed on appeal, in absence of error or fraud.**

Allowance by court to defendant buyer of furs from assassin and robber, as constructive trustee for original owner, of amounts paid for marketing furs, though seemingly excessive, will not be disturbed on appeal, in absence of evidence of fraud or error.

**8. Damages ☞67.**

Consular court regulations of 1864, allowing 12 per cent. interest on judgments, do not apply to interest allowed as damages.

**9. Damages ☞67.**

In absence of statute, reasonable interest according to custom of community as to similar dealings is allowable as damages.

**10. Damages ☞69.**

In equity, allowance of interest as damages for wrongful conversion is discretionary.

**Appeal from United States Court for China.**

Suit by the Fur & Wool Trading Company (D. Biedermann), Limited, against Andersen, Meyer & Co., Limited. Decree for plaintiff, and both parties appeal. Affirmed.

The appellee, a British corporation, brought a suit for an accounting against the appellant, an American corporation organized under the laws of the Philippine Islands, and in its petition alleged that on or about April 15, 1921, it owned and was in possession of certain valuable skins at Urga in Mongolia, in the custody of its agent, Matvei Noskoff, of the total value of $189,-360 local currency; that on or about April 24, 1921, Noskoff was arrested and six days later was killed by one Sepailoff, pretending to act under the orders of Baron Ungern; that Sepailoff at the same time "looted" the said skins; that after Noskoff's death the appellant obtained the skins from Sepailoff paying therefor 28 cents apiece, except 40 sable skins which were not paid for, and wrongfully took and detained said skins in its godowns in Tientsin and elsewhere, and refused to deliver them to the appellee, the lawful owner thereof; that said skins, being perishable, have been removed from the jurisdiction with the consent of the appellee. There was a prayer for an accounting and for damages in the amount of the value of said skins and for such further relief as to the court might seem meet. The appellant's answer was a denial of the allegations of the petition. The trial court, upon consideration of the evidence, found that Sepailoff by his forcible seizure of the furs raised in the appellee's favor a constructive trust enforceable against the appellant, which acquired them with notice; that the appellee's consent that the appellant might dispose of them pending the outcome of the suit merely continued the trust and caused it to attach to the proceeds; that the appellant was under obligation to account for at least the net proceeds; and that the appellee might claim the profits of the transaction regardless of the market value at the time of the conversion. It was accordingly decreed that the appellant file an account under oath of all furs acquired from Sepailoff and belonging to the appellee, and of the amounts realized upon the sale of the same and the necessary and legitimate expense of marketing. Upon such accounting being had the court found that the appellant received from the sale of said furs $67,319.20 gold, out of which it was entitled to retain $8,376.27 to reimburse it for expenditures before reaching New York, and that it was entitled to retain for services and marketing said furs the further sum of $4,536.67, leaving a balance of $54,406.26, which amount the appellee was entitled to receive from the appellant, together with interest thereon amounting, principal and interest, to $63,-664.02, gold, for which sum judgment was rendered.

Chalaire & Franklin, of Shanghai, China, and Pillsbury, Madison & Sutro, of San Francisco, Cal. (Alfred Sutro and Eugene M. Prince, both of San Francisco, Cal., of counsel), for appellant and cross-appellee.

Richard T. Evans, of Tientsin, China, and Frank E. Hinckley, of San Francisco, Cal., for appellee and cross-appellant.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Sepailoff was commandant of Urga under Baron Ungern, who, as an anti-Bolshevik leader, had entered Mongolia in aid of the Mongolian struggle for independence. Sepailoff seized Noskoff, the appellee's agent, at his home after midnight, imprisoned him, pillaged his house, demanded a heavy ransom from his wife, and took possession of the appellee's premises and seized the furs which are the subject of the present suit. Kotoff, the appellant's agent, purchased the furs from Sepailoff and paid him $24,000 (gold), a sum which the evidence indicated was far below their value, and under Sepailoff's bill of sale the furs were delivered to the appellant and were conveyed by caravan to Kalgan and thence to Tientsin and were there shipped to the United States, where they were sold.

The appellant contends that under the facts in the case it was a trustee of an implied trust, and as such it is entitled to reimbursement for the purchase money it paid to Sepailoff and for its expenditures on behalf of the furs in redeeming them from military confiscation and transporting them to safety; that it acted in good faith; that it committed no fraud; and that, according to the evidence, it bought the furs without actual notice of the appellee's title; and that even if it had such notice the purchase so made to save Noskoff's life was rightful and entitled the appellant to hold the furs until it was repaid the purchase money and expenses. To this it is to be said that the evidence sustains, we think, the conclusion of the trial court that the appellant at no time dealt with the appellee or its agent, Noskoff, but acquired the furs from Sepailoff under Sepailoff's bill of sale executed after Noskoff's death. This is not contradicted by the fact that Mrs. Noskoff interceded on behalf of her husband and applied to Kotoff for assistance. She testified that Sepailoff sent Cossacks, who brought her at 11 o'clock at night to his office, where he repeated his demand for a large ransom to release her husband, and stated that if the money was not forthcoming she would be murdered on the morrow; that he advised her to sell the furs; that she told him that the goods did not belong to her, but belonged to the appellee; that the next morning she begged Kotoff to help her, but he answered that he had no such sum in his possession. She testified that she appeared again before Sepailoff, who ordered her to produce the money on pain of death to her husband and herself, and that she again called on Kotoff and begged him to buy the furs, and that thereafter Kotoff spoke to Sepailoff and arranged with him for the purchase of the furs. It is true that Kotoff testified that he considered the premises in which the furs were stored the property of Noskoff because Noskoff's signboard appeared over them, but he admitted that he had seen a British flag flying over the premises, and it was shown that the British flag was maintained over the premises, and that a signboard read "British Merchants, Biedermann Buyers of Fine and Coarse Furs, Branch from London." There was evidence that the appellee was incorporated in December, 1919, that prior to that time its business was carried on in the name of D. Biedermann, that Noskoff was an employee of Biedermann, and that during the World War, owing to the prejudice against Biedermann, who, although he was a Russian, had a German name, Noskoff was instructed to operate under his own name. That the appellant was aware of Noskoff's relation to the business is shown by the letter to the appellee written on December 19, 1921, by Larson, the appellant's manager at its head office at Shanghai, in which he solicited the position of the appellee's agent in Mongolia, and said: "I knew your former man, Mr. Noskoff, very well. I also know how your business in Mongolia was conducted. * * * We have at present a lawsuit on with your firm, but that ought not to cause any ill feeling or stand in the way of future business." There was also the testimony of Captain Neville that Kotoff told him that he bought Biedermann's skins from the "English company." As tending to indicate absence of good faith on the part of the appellant, reference may be made to the undisputed testimony that Raskin, the attorney for the appellee, went to the appellant at Tientsin "and wanted to make an amicable arrangement and wanted to offer the cost and all expenses, not knowing how much it cost," but that the appellant declined the offer, and to the further fact that on the accounting had herein prior to the final decree, the appellant asserted its costs and expenditures to be a sum total which exactly equaled the amount realized by it as the proceeds of the sale of the furs, leav-

ing no balance whatever for the benefit of the appellee.

[1] The cases cited by the appellant to the proposition that the trustee of an implied trust is entitled to all expenditures made by him for the benefit of the trust property, unless he is guilty of actual fraud, are not in point here. The allegations of the complaint that Sepailoff "looted" the furs, that after Noskoff's death the appellant obtained them from Sepailoff on paying him a sum far less than their value and wrongfully took and detained the same and refused to deliver them to the appellee, present charges if not of actual, at least of constructive, fraud, and the evidence, as the court below found, and we think correctly found, sustains the allegations of the petition. In short, the appellant purchased the goods while they were under seizure by an assassin and robber, one whom it knew had no title or right of possession and could convey no title, and it is not aided by the fact that it purchased at the urgent request of the wife of an agent who himself had no title or interest, as the appellant must have known.

[2] We are unable to see how the stipulation of date October 26, 1921, made after the commencement of the suit, can be construed as implying an admission by the appellee of its liability for the purchase money and for the expenditures of the appellant. In that stipulation it was agreed that an inventory be taken and that the appellant thereafter might dispose of the skins so inventoried. The reason for the stipulation was the perishable nature of the furs and the fact that the judge of the court below was at that time absent from China and the date of his return was unknown. It is not to be taken as indicating any change in the nature of the trust which had been imposed upon the appellant by its previous acts.

[3-5] The appellant denies the sufficiency of the petition to sustain the decree or to warrant equitable relief, and asserts that the appellant's remedy is at law for conversion, and that there is nothing in either pleading or proof to show that the legal remedy is inadequate. In the court below there was no demurrer to the complaint. As the subject-matter here involved belongs to the class of cases of which a court of equity has jurisdiction, the objection so made to the jurisdiction in equity because of an adequate remedy of law will be disregarded. Reynes v. Dumont, 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934. It is also objected that the bill is defective for its failure to express an offer to do equity, but such an offer, if necessary in this case, was waived. "The absence of an offer to do equity is waived by failure to demur." 21 C. J. 401; Twin Lakes Land & Water Co. v. Dohner, 242 F. 399, 155 C. C. A. 175. But the final answer to both objections is that neither of them can be held ground for reversal here, for the court below had jurisdiction of the cause of action on one side or the other, whether at law or in equity. The statutes creating the United States Court for China make no provision for jury trials. The appellant participated in the trial without objection to the form of action or to the jurisdiction. The trial would have been had in no different manner had it been regarded a law action, and the amount recoverable under the pleadings, the stipulation, and the evidence would have been the same in either form of action. Wooden Ware Co. v. United States, 106 U. S. 432, 1 S. Ct. 398, 27 L. Ed. 230; United States v. Ute Coal & Coke Co., 158 F. 20, 85 C. C. A. 302; H. D. Williams Cooperage Co. v. United States, 221 F. 234, 137 C. C. A. 90; 1 R. C. L. 127.

[6] On its cross-appeal the appellee assigns error to the disallowance of its bill of costs. All that the record shows as to the bill of costs is that the court denied the appellee's right to recover disbursements for traveling expenses for witnesses to attend the several hearings, for subsistence of witnesses while awaiting trial, for fees paid to interpreters, one-half of the survey fees paid pursuant to the stipulation of October, 1921, notarial fees paid in London and in Urga for certified copies of papers, and amounts paid to the clerk of the court for transcripts of the evidence. The record contains no showing that any of these disbursements was necessary. All that it contains is a recital that the appellee's manager made an affidavit to the effect that he had disbursed or ordered the disbursal of the said items. There being no proof of error or abuse of discretion in disallowing the cost bill, the ruling is not subject to review. Newton v. Consolidated Gas Co., 265 U. S. 78, 83, 44 S. Ct. 481, 68 L. Ed. 909. The sum paid for survey fees by the appellee was not, under the stipulation of October, 1921, recoverable from the appellant.

[7] Nor are we convinced that the court below erred in allowing the payment of $23,414.16 by the appellant to George I. Fox, Inc., or in allowing $4,536.67 to the appellant for its services in marketing the furs. In directing the accounting the court below had ordered the appellant to show the "nec-

essary and legitimate expenses of marketing"—thus obviously expressing its judgment that those expenses should be allowed. No exception was taken to the order, and the accounting was had in accordance therewith. There was proof that the appellant had entered into an arrangement with George I. Fox, Inc., whereby the latter was to use its retail selling organization in New York for the disposal of the furs in small lots "for the purpose of obtaining a higher rate," the agreement being that George I. Fox, Inc., was to receive one-half of the difference between the total alleged cost price of the skins to the appellant and the price obtained on the sale thereof. The trial court, while entertaining the opinion that the allowance was rather liberal, found nothing on which to base a finding of fraud, and overruled the objection to the payment to George I. Fox, Inc., on the ground that the appellee had failed to show that the appellant was bound to account therefor. The evidence upon the accounting is meager, and, while the amount so allowed to George I. Fox, Inc., seems excessive, this court is in possession of no evidence on which to hold that the court below was in error in allowing the same. Nor have we evidence on which to rule that the allowance to the appellant of the sum of $4,536.67 for services in marketing the furs should not have been made. The appellee contends that the sum so allowed was 5 per cent. upon the gross amount of the proceeds of the sale and that the percentage should have been allowed only upon the net amount received by the appellant from George I. Fox, Inc., which was $67,319.20. The trial court, however, made the allowance in the sum of $4,536.67 without expressly adopting a percentage rule, and we are not in possession of facts which would justify us in disturbing the same.

[8-10] The decree awards interest to the appellee at 6 per cent. per annum upon the sums received by the appellant from George I. Fox, Inc. The appellee contends that the rate of interest should have been 12 per cent. in accordance with the consular court regulations of 1864, which allow 12 per cent. on judgments. But the interest allowed here is not interest upon a judgment. It is interest by way of damages, and the consular court regulations are not applicable. It was held in Young v. Godbe, 15 Wall. 562, 21 L. Ed. 250, that where there is no statutory rate of interest, interest at a reasonable rate and conforming to the custom which obtains in the community in dealings of the same character will be allowed by way of damages. That rule was applied in New Dunderberg Min. Co. v. Old, 97 F. 150, 38 C. C. A. 89, and Nolte v. Hudson Nav. Co. (C. C. A.) 8 F.(2d) 859, 867. There is no showing that 6 per cent. was not allowable under that rule. It is to be observed also that in equity interest in a case of wrongful conversion is a matter of discretion. Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 778, 117 C. C. A. 560; Robertson v. Miller (C. C. A.) 286 F. 503, 509.

The decree is affirmed.