STATE OF MISSOURI at the Relation of METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, FRANCIS H. TRIMBLE and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—66 S. W. (2d) 871.

Division Two, December 20, 1933.

*Roy P. Swanson* and *Robert E. Coleberd* for relator; *Leroy A. Lincoln and Meservey, Michaels, Blackmar, Newkirk & Eager* of counsel.

*Carl R. Johnson* for Sophia Rainey.

FITZSIMMONS, C.—This is a proceeding by certiorari to quash the opinion of the Kansas City Court of Appeals in the case of Sophia Rainey, Administratrix of the estate of Louis Rainey v. Metropolitan Life Insurance Company, 58 S. W. (2d) 790, for the stated reason that the opinion of the appellate court is in conflict with controlling decisions of this court. Counsel for relator and for respondents in their respective briefs go beyond the range of the writ of certiorari by stating facts in evidence gleaned from the abstract of the record but not stated in the opinion of the appellate court, and by raising points of imputed conflict or concurrence of the opinion before us with other opinions of the several courts of appeal. We shall keep within the statement of facts made by the Kansas City Court of Appeals and shall decide alone the two points of conflict with decisions of this court raised by relator. The facts taken from the statement in the opinion of the Kansas City Court of Appeals are as follows:

Sophia Rainey, administratrix of the estate of Louis Rainey, deceased, sued relator Metropolitan Life Insurance Company, on a policy of insurance upon the life of Louis Rainey, deceased, and obtained judgment in the Circuit Court of Jackson County for $350, the face of the policy, also for $101.55 interest and $200 attorneys' fees for vexatious refusal to pay, making a total judgment of $641.55. From this judgment the insurance company appealed to the Kansas City Court of Appeals. The policy was payable to the executor or administrator of the estate of Rainey and was dated November 25, 1925. The premiums were payable weekly. The last premium was paid June 7, 1926, and the policy was in force until June 28, 1926. No premium was paid for the balance of the month of June nor for the months of July, August, September, October or November, 1926. The policy, in accordance with its terms, was officially lapsed July 26, 1926, by the insurance company for nonpayment of premiums. The deceased took sick December 12, 1926. He entered a hospital December 13, 1926. Sophia Rainey, then the wife of Louis Rainey, paid to a collector of the insurance company at about eleven or eleven-thirty A. M., on December 16, 1926, premiums of $14. Louis Rainey died that same day December 16, at six-thirty P. M. The policy provided:

"This policy constitutes the entire agreement between the company and the insured and the holder and owner hereof. Its terms cannot be changed, or its conditions varied, except by the express agreement of the company evidenced by the signature of its President or Secretary. Therefore agents (which term includes also managers and assistant managers) are not authorized and have no power to make, alter or discharge contracts, to waive forfeitures or to receive premiums on policies more than four weeks in arrears, or to receipt for the same, and the payment to an agent of any such arrears shall be at the sole risk of the person making such payment and shall not be credited as a payment upon the policy, whether receipt be given for such payment or not.

"The company assumes no obligation prior to the date hereof.

"If any premium under this policy shall not be paid when due, the policy shall lapse, subject to the provisions for grace period and to the nonforfeiture privileges as herein contained, and such lapse shall not be considered to have been waived by the company in any respect by reason of the acceptance of overdue premiums upon this or any other policy."

The policy also provided for a grace period of four weeks for the payment of premiums after the first. It also provided:

"REVIVAL. Should this policy become void in consequence of nonpayment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured."

Sophia Rainey, the widow and at the time of suit, the administratrix, of the insured, testified that she resided in Kansas City; that, while she visited deceased every day while he was in the hospital, including the day of his death, she did not know that he was at the point of death, or that "he was as sick as he was;" that she could read and write fairly well; that she knew the premiums on the policy had not been paid but gave as an excuse for this, that a Mr. Godfrey or Harvey had been collecting them and that he came to her home once or twice attempting to write insurance for another company, saying that he was no longer connected with defendant, and said that he would send a collector around for the premiums; that she heard nothing further from defendant or any one connected with it, until December 16, 1926. At the last mentioned date a Mr. Shnayerson, a collector for the company was collecting premiums for the defendant from a woman living next door. This woman brought Shnayerson to the witness's house at about eleven or eleven-thirty in the morning. He asked plaintiff if she wanted to pay up the premiums past due. He told her it would require $14 to pay them up. Plaintiff paid him this sum of money and he marked the premiums as paid in the premium receipt book in plaintiff's possession. The collector did not say anything about a revival

application. She did not know that the policy had lapsed for non-payment of premiums. The collector did not ask where her husband was and she did not tell him. She knew that her husband was in the hospital, but she did not know that he was seriously ill. The collector came back to the house either on Sunday or Monday, December 17th or 18th, and brought a man with him, who said he was a "home office man," and wanted to see the premium receipt book and the policy. She told him the undertaker had these. When these men came they did not offer any money to her and no money was ever tendered to her by the defendant until after she brought this suit. The suit was brought on July 18, 1930. Defendant did not at any time present her with a revival form.

Shnayerson, who testified for the defendant, stated that prior to December 16, 1926, he had never seen the plaintiff; that he was walking past her house about five o'clock in the afternoon of that day with a collection book under his arm; that plaintiff opened the door of her house and asked him if he was a "Metropolitan man," and he answered in the affirmative; that she then stated:

" 'I have a policy here on my husband that has been lapsed out of benefit and I would like to make my husband a little Christmas present.' It was December. She said, 'I think a woman can make her husband the best Christmas present by taking out a little insurance and taking out a policy.' " She then handed him the premium receipt book and he counted up the weeks that the premiums were in arrears and told her that there were twenty-eight weeks due at fifty cents per week, and "before I had a chance to say anything, there was $14 right in my face; handed me $14. I knew I had to leave some kind of receipt for her money. I marked up the entire receipt book for that twenty-eight weeks and signed my name to it." He told her, however, that "I will have to come back for some additional information. I asked her where her husband was and she said, 'At work;' " that he told her it would be necessary for her to have some type of revival form executed before the policy could be reinstated; that he returned the next day, which was Sunday, with the revival form, and said to plaintiff: "I came here with a blank for your husband to sign. And she said, 'My husband? Why, he is at the undertakers.' I said, 'Does he work there?' And she said, 'No, he is dead.' " He then stated to her: "You can't reinstate no insurance on a dead man. Your husband would have to sign this blank."

Upon hearing that the insured was dead Shnayerson called up Mr. Leifer, who was defendant's manager at its Terrace Park district office, and told him about the matter.

Shnayerson further testified that on Tuesday morning, December 19th, he, in company with Mr. Oppenheimer of defendant's Terrace Park district office, called to see the plaintiff; that Oppenheimer tendered to plaintiff the sum of $14. Oppenheimer, also, testified

that he tendered to plaintiff the $14, being the premiums that she had paid Shnayerson, and that he asked her to let him see the receipt book so that he could erase the $14 payments shown therein; that plaintiff told him that the receipt book was at the undertakers. She refused to accept the tender. There was also evidence on the part of the defendant that a tender of the money was made to plaintiff on May 23, 1928. The $14 paid by plaintiff was sufficient to carry the policy beyond the date of insured's death, if the furnishing of evidence of the good health of insured was waived by the defendant.

I. The Kansas City Court of Appeals in passing upon the demurrer to the evidence said (58 S. W. (2d) 793): ''We may concede, as defendant contends, that the provisions in the policy in reference to its revival are binding upon the parties, and that the undisputed evidence shows that there was no effort on the part of deceased, or any one for him, to furnish a revival certificate. We also may concede, without deciding, that the acceptance by Shnayerson, a mere collector, of the premiums without the execution of the revival certificate, did not constitute waiver of the provision in the policy relative to the presentation of evidence of the sound health of insured. But these concessions do not result in a holding that the demurrer to the evidence should have been sustained. In considering the matter as to whether a demurrer to the evidence should have been sustained, the testimony, and all of the inferences that may reasonably be drawn therefrom, must be taken in its most favorable light to the plaintiff. Plaintiff testified that there was no tender of the money that she paid Shnayerson to cover the premiums due at the time of the death of the insured until after this suit was brought, which was more than three and one-half years after the defendant must have known that Shnayerson had received the $14 from plaintiff for the defendant. It is quite apparent from this record that defendant, through its manager, did know of this a day or two after its receipt. If defendant kept these premiums for an unreasonable length of time, after having received them, or with the knowledge that its solicitor, Shnayerson, had received them, without repudiating the transaction by returning the money, then defendant ratified the act of Shnayerson in receiving the money for it, waived the provision of the policy providing for presentation of evidence satisfactory to the company of the sound health of insured and is estopped to claim that such evidence should have been furnished it.''

. And the Court of Appeals held that, as the hypothesized statements were questions of fact for the jury the demurrer was rightly overruled. Relator here contends that the Court of Appeals by so ruling totally ignored the act of Sophia Rainey in concealing the illness of her husband, and that the Court of Appeals in so holding failed and refused to follow what relator calls the last and controlling decision of this court, namely Schwab v. Brotherhood of

American Yeomen, 305 Mo. 149, 264 S. W. 690. It is settled law that, "in order that the record of a Court of Appeals in a given case may be quashed by this court on certiorari, the opinion in such case must have announced some general principle of law contrary to the latest announcement of this court upon the subject, or on a given state of facts must have announced and applied some conclusion of law contrary to a conclusion of this court on a similar state of facts." [State ex rel. v. Reynolds (Mo.), 214 S. W. 121, 122.]

The facts in the Schwab case were these: The plaintiff held a certificate of life insurance in the defendant fraternal benefit society. In her application for insurance she expressly denied having undergone a certain operation which in fact had been performed upon her. The certificate of insurance, in addition to the life insurance feature, also provided that, in case of total disability, one-half of the principal sum of insurance should be due to her. She filed a proof of claim for total disability on account of trouble in the organ of the body on which had been performed the operation which in her application she had denied having undergone. Defendant denied liability and on December 1, 1918, forwarded from its home office in Des Moines, Iowa, to its Missouri local correspondent with whom plaintiff dealt, a check for $20.95, the amount of all dues which defendant had therefore paid, exclusive, however, of eighty-five cents, the dues for November, 1918, and which plaintiff had paid to the local correspondent on November 30. This payment had not reached Des Moines when the remittance of $20.95 was made. Plaintiff rejected the tender of back dues, and brought suit. Defendant made tender of the payment of eighty-five cents with its answer. The trial court found that plaintiff had misrepresented the matters and things charged by defendant, but that the defendant, by receiving and retaining until tender by answer the eighty-five cent payment, had waived its right to defeat recovery on the ground of misrepresentation. The Springfield Court of Appeals, in its majority opinion (Schwab v. Brotherhood of American Yeomen; 243 S. W. 443), held to the contrary and reversed the judgment. But, one of the judges dissenting and holding that the majority opinion was in conflict with opinions on the law of waiver, rendered by other courts of appeal, the cause was certified to the Supreme Court. This court, in its opinion (305 Mo. 149, 264 S. W. 690) sustained the majority opinion and reversed the judgment of the trial court. This court, in its opinion (264 S. W. l. c. 692) stated the general principles of law of waiver thus:

"A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. (Authorities cited.) It has been said that the law of waiver is a 'technical doctrine introduced and applied by courts for the purpose of defeating

forfeitures.' It has also been said that in insurance cases the courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But even in insurance cases the *intention to waive* must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve *some* element of estoppel. [Parsons, Rich and Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 7 Ann. Cas. 1144.]''

This court further argued the questions involved and closed its opinion with these words: ''Our conclusions are in harmony with the general rule that a return of the premium is not essential to the avoidance of a policy, nor is its mere retention a waiver, especially where the insured was guilty of fraud in obtaining the policy. [14 R. C. L. 1193.]''

In our opinion the ruling made by the Court of Appeals is contrary to the principle announced by this court in the Schwab case and also that the facts in the two cases are sufficiently similar to constitute a conflict. This court has ruled that a reinstatement of a lapsed policy is in effect a new contract of insurance. [Jenkins v. Covenant Mutual Life Insurance Co., 171 Mo. 375, 71 S. W. 688; Aetna Life Insurance Co. v. Daniel, 328 Mo. 876, 42 S. W. (2d) 584.] Therefore the questions of law raised here should be judged by the same rules as in the Schwab case in which the want of knowledge on the part of the insurer of the true state of health of the insured dated back to the original application. The proof of claim of total liability in the Schwab case gave the insurer its first knowledge of the physical condition of the insured at the time of issuance of the policy. The Kansas City Court of Appeals in its opinion in the instant case emphasized the want of knowledge of the insurance company of the state of health and impending death of the insured thus (58 S. W. (2d) l. c. 794): ''As before indicated, the undisputed evidence is that no one connected with defendant had any knowledge of insured's lack of good health until after the premiums were paid or in fact until he died.'' We may add that, upon the facts stated, it is equally undisputed that Sophia Rainey did have knowledge of her husband's lack of good health before she paid the premiums and that she concealed that fact.

The policy provided that in case it should become void in consequence of nonpayment of premium, it might be revived upon the performance of two conditions, first, the payment of all arrears and second, the presentation of evidence satisfactory to the insurer of the sound health of the insured. The wife of the insured complied with the first condition between eleven and eleven-thirty A. M., on December 16. The man was then in hospital, and there he died about seven hours later. Between the hour of payment and the moment of death, no act was done by or on behalf of the insured to furnish evidence of his sound health and upon the record such evidence could not have been presented. And during that same sad and short

period of seven hours there was no act or non-act of the insurer to impute to it a waiver of the second condition for the revival of the policy. Relator's collector, Shnayerson, testified that at a conference with Mrs. Rainey, after her husband's death, he said to her: "You can't reinstate no insurance on a dead man." A simple truth crudely stated. If insurance cannot be reinstated on a dead man, it should follow that waiver of a condition of reinstatement cannot be proved solely by acts of the insurer done after the death.

In the instant case there was not, during the lifetime of the deceased, the slightest evidence of an intentional relinquishment by relator of a known right, as a waiver is defined to be in the Schwab case. The intention of the insurer to waive the second condition to revival of the policy does not plainly appear, nor do the acts or conduct of the insurer relied upon to constitute waiver involve any element of estoppel. These are the tests of the Schwab case. Judged by this standard of applicable law, the opinion of the Kansas City Court of Appeals in holding, for the reasons stated in that opinion, that the demurrer to the evidence was properly overruled, is in conflict with a controlling decision of this court. If the insured were alive when the fact of payment of the delinquent premiums came to the knowledge of an agent within the scope of whose agency it was to require evidence of good health or to waive such evidence, and if the insured lived sufficiently long after that knowledge came to such an agent to afford the insurer a reasonable time in which either to demand the evidence or to waive it, there would be presented a state of facts which is not in this case. See Andrus v. Fidelity Mutual Life Insurance Assn., 168 Mo. 151, 67 S. W. 582, the only case of this court cited by respondents in support of the point under examination, and clearly distinguishable from the facts here. The Court of Appeals, in its opinion states: "It is quite apparent from this record that defendant (the insurance company), through its manager, did know of this (payment of $14) a day or two after its receipt." But upon the same record, as reflected in the opinion under examination, the insured was dead when this knowledge reached the manager of relator's Terrace Park District.

Whatever liability relator might incur under the policy matured upon the death of Louis Rainey about seven hours after the payment of premiums to the collector. This court has held many times in examining Section 5732, Revised Statutes 1929, that the liability of an insurance company upon a life policy can be avoided upon the ground of misrepresentations in the original procurement of the policy only upon proof that the misrepresentations actually contributed to the death of the insured. [Schuermann v. Insurance Company, 165 Mo. 641, 65 S. W. 723; State ex rel. v. Trimble, 292 Mo. 371, 239 S. W. 467.] And we have also held that an insurer may avoid liability by showing that reinstatement of a lapsed policy was obtained by misrepresentations, provided that those misrepre-

sentations actually contributed to the death. [Aetna Life Insurance Co. v. Daniel, 328 Mo. 876, 42 S. W. (2d) 584.] And this court has held that this statute (Sec. 5732) gives to the insurer a complete and adequate remedy at law, so that, after the death of the insured, the insurer cannot seek relief in a court of equity for cancellation of the policy, but must abide the bringing of an action against it on the policy, absent any questions of incontestability under the contract. [Aetna Life Insurance Co. v. Daniel, supra.] But in suits brought upon life policies, "no defense based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial deposit in court for the benefit of the plaintiffs, the premiums received on such policies." [Sec. 5735, R. S. 1929.] Prior to the enactment of present Sections 5732 and 5735 it was the contractual right of an insurer, in defense of an action upon a policy, to plead misrepresentations, even though they bore only remotely if at all upon the risk assumed. And these defenses the insurer could make without any deposit of premiums paid. [Schuermann v. Union Central Life Insurance Co., 165 Mo. 641, 65 S. W. 723, l. c. 725.] The legal defense of misrepresentation having been valid before the statutes were passed, it should be available to relator here within the limits and under the conditions of the statutes, there being absent from the record any element of estoppel. For in the instant case, there not only was absent proof of waiver of the requirement of evidence of the good health of the insured, but there was present evidence of misrepresentation in the inducement of relator's collector to accept payment of premiums. "Deceit may be negative as well as affirmative. It may consist in the repression of that which it is one's duty to declare as well as by the declaration of that which is false." [Denny v. Guyton, 327 Mo. 1030, l. c. 1093, 40 S. W. (2d) 562.] It is clear from Sophia Rainey's own testimony that when she paid the premium money to relator's collector she knew that her husband was sick in hospital, yet she concealed that fact. For this additional reason the opinion under examination is in conflict with the general rule, approved by this court in the Schwab case, that a return of the premium (except by statutory deposit in court) is not essential to the avoidance of a policy where there was deceit in obtaining the policy or in procuring its reinstatement.

II. Relator contends that the opinion of the Kansas City Court of Appeals, in approving the infliction of a penalty and the assessment of an attorney's fee for vexatious refusal to pay is in conflict with the decision of this court in the case of State ex rel. Continental Life Insurance Co. v. Allen, 303 Mo. 608, 262 S. W. 43. The Court of Appeals in its opinion thus ruled the issue of vexatious refusal to pay (58 S. W. (2d) l. c. 795):

"In this connection it is contended that there is no evidence of

vexatious refusal to pay. The fact that the jury, within its province, found that the premiums collected by Shnayerson were not tendered back within a reasonable time, together with the fact that defendant sought to destroy the evidence of the payment of these premiums, by getting control of the receipt book and erasing from it the evidence of payment contained therein, was sufficient from which the jury could find that defendant was guilty of vexatious refusal to pay. [Pauley v. B. M. A. Co., 217 Mo. App. 302; Ash v. Natl. L. & A. Co., (40 S. W. (2d) 505), supra.]''

The case of State ex rel. v. Allen, supra, was a proceeding in certiorari to determine an issue of conflict of the opinion of the St. Louis Court of Appeals in the case of Brabham v. Pioneer Life Insurance Co. of America, 253 S. W. 786, with controlling decisions of this court. This court quashed such part of the opinion of the Court of Appeals as approved the allowance in the trial court of damages for vexatious delay. The facts were that the insured was assaulted on January 20, 1919, and received physical injuries from which he died on November 7, 1919. He was suffering from these injuries when he made application for the policy dated February 25, 1919, and when he received the policy on March 4, following. Among the defenses was that the insured in the application for the policy falsely stated that he had received no injuries during the last five years prior to the application and that he then was in good health. There was testimony on behalf of plaintiff that the agent of the insurer was fully informed of the prior injury and that the applicant for insurance was then suffering from the effects of the assault and that the agent encouraged him to take the insurance on account of his condition. The agent, testifying on behalf of the insurer, denied this testimony offered by the plaintiff. The Court of Appeals in its opinion stated that, ''since the defendant must be held to have had such knowledge of the facts pertaining to the health of the insured as was possessed by the agent, we see no escape from holding that whether under the statute, defendant should be penalized as for vexatious refusal to pay the loss was a question for the jury.''

The Supreme Court quashed this part of the opinion of the St. Louis Court of Appeals as being in conflict with the decisions of this court in Non-royalty Shoe Co. v. Assurance Co., 277 Mo. 399, 210 S. W. 37, and State ex rel. v. Allen, 295 Mo. 307, 243 S. W. 839, upon which cases relator here also relies. This court, in its decision in State v. Allen, 303 Mo. 608, 262 S. W. 43, l. c. 45, said: ''While it is settled law that the principal is bound by the knowledge of his agent acquired with reference to matters within the scope of his agency, relator's knowledge admittedly was purely constructive, and not actual. On the witness stand its agent denied any knowledge whatever of the insured's previous injury and his resulting bad physical condition. If neither the relator nor its agent had knowledge of insured's bad physical condition when the policy was de-

livered, relator had a complete defense to the suit, and the undoubted right to refuse payment and to defend the action after it was instituted. Respondents recite no facts in their opinion tending to show that relator had any reason to expect the proof to show that its agent, who delivered the policy, and consequently relator itself, had knowledge of insured's bad physical condition at the time the policy was delivered, and therefore that such defense was waived. Relator, therefore, had the right to litigate the case on the proposition that it had not waived what would otherwise have been a complete defense to plaintiff's suit. An insurance company's right to resist payment upon one of its policies cannot be determined by the facts as found by the jury, but must be determined by the facts as they reasonably appeared to it before the trial. It has the right to refuse payment and to defend a suit with all the weapons at its command, so long as it has reasonable ground to believe its defense is meritorious. It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay."

We are of opinion that, in the instant case, the relator relying upon the testimony of Shnayerson and its other witnesses, and relying too upon all the evidence given and hereinbefore epitomized, had the right to litigate the Rainey case "on the proposition that it had not waived what would otherwise have been a complete defense" to the Rainey suit.

For the reason that the opinion of the Kansas City Court of Appeals in the cause entitled Sophia Rainey, Administratrix, etc., Respondent, v. Metropolitan Life Insurance Company, Appellant, 58 S. W. (2d) 790, is in conflict with the controlling decisions of this court in Schwab v. Brotherhood of American Yeomen, supra, and State ex rel. Continental Life Insurance Co. v. Allen, supra, that opinion of the Kansas City Court of Appeals is quashed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.