## ROSENTHAL et al. v. NEW YORK LIFE INS. CO.

No. 10938.

Circuit Court of Appeals, Eighth Circuit.

Nov. 16, 1938.

Douglas W. Robert, of St. Louis, Mo., for appellant Esther Rosenthal.

James C. Jones, Jr. (James C. Jones, Lon O. Hocker, Frank Y. Gladney, and Joseph H. Grand, all of St. Louis, Mo., and Louis H. Cooke, of New York City, on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The New York Life Insurance Company brought this suit on June 2, 1934, to cancel two reinstatements of a life policy upon the joint lives of Joseph Rosenthal and Esther Rosenthal and payable to the survivor of them if either should die while the policy was in force. Joseph Rosenthal had died May 14, 1933. Esther Rosenthal and the Lafayette South Side Bank & Trust Company, which was nominally an assignee

of the policy, were joined as defendants. In its complaint the insurance company alleged that the reinstatements were fraudulently procured. In their answers the appellants denied that the reinstatements, the cancellation of which was sought, were fraudulently procured, and asserted that the policy was in full force on May 14, 1933, when Joseph Rosenthal died. Esther Rosenthal asserted that she was entitled to the proceeds of the policy, and that the assignment of it to the Lafayette South Side Bank & Trust Company was void.

The trial court entered a decree cancelling the reinstatements of the policy and denying the appellants any relief upon their counterclaims. With slight modifications, this Court affirmed. 8 Cir., 94 F.2d 675. On certiorari, the Supreme Court, because of its decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, vacated the judgment of this Court and remanded the case for determination in accordance with the decisions of the Supreme Court of Missouri. Rosenthal v. New York Life Insurance Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330.

The facts are fully stated in our former opinion (8 Cir., 94 F.2d 675) and need not be repeated.

Three questions are presented:

1. Is this suit barred by the two-year incontestable clause of the policy in suit?

2. Is the insurance company precluded by waiver or laches from maintaining this suit?

3. Was the policy in force on May 14, 1933, by virtue of the provision for extended insurance?

We shall consider these questions in their order.

■ 1. In our former opinion we held that the incontestable clause of this policy did not bar a suit brought within two years of the reinstatement of the policy to cancel the reinstatement on the ground of fraud in its procurement, since the incontestable clause, with respect to such a suit, ran anew from the date the policy was reinstated. Concededly, the Supreme Court of Missouri has not announced a different rule. Apparently the precise question has not been passed upon by that court. It has held, however, that "a reinstatement of a lapsed policy is in effect a new contract of insurance. Jenkins v. Covenant Mutual Life Insurance Co., 171 Mo. 375, 71 S.W. 688;

Aetna Life Insurance Co. v. Daniel, 328 Mo. 876, 42 S.W.2d 584." State ex rel. Metropolitan Life Insurance Co. v. Shain, 334 Mo. 385, 66 S.W.2d 871, 874. That being so, it would naturally follow, as pointed out by the St. Louis Court of Appeals in Martin v. Metropolitan Life Insurance Co., 113 S.W.2d 1025, that the incontestable clause would run anew from the date of reinstatement.

So far as we are aware, only the Supreme Court of Arkansas holds that the incontestable clause of a life policy runs from the date of its issue with respect to a suit brought to set aside a reinstatement fraudulently procured. See New York Life Ins. Co. v. Campbell, 191 Ark. 54, 83 S.W.2d 542. That case holds that the reinstatement of a life policy does not create a new contract, but revives the original contract, and that the incontestable clause does not run anew from the date of reinstatement. This ruling, in so far as it relates to a suit to set aside a fraudulent reinstatement, is not only clearly contrary to the weight of authority (see Rosenthal et al. v. New York Life Ins. Co., 8 Cir., 94 F.2d 675, 678, 679) but is also opposed to the decision of the Supreme Court of Missouri in State ex rel. Metropolitan Life Insurance Co. v. Shain, supra, holding a reinstated policy to be, in effect, a new contract.

■ 2. We cannot conceive that there is any merit in appellants' claim that the insurer waived its right to cancel these reinstatements for fraud or was guilty of laches because it waited for thirty days after discovery of the fraud before notifying the insured of its intention to rescind the reinstatements. We think that the company acted with reasonable promptness in giving notice of rescission. There is no evidence in the record which would justify a finding that the insured suffered any prejudice by reason of the thirty days' delay. At the time of reinstatement, Joseph Rosenthal was in the last stages of syphilis, and it is apparent that he could not honestly have procured life insurance from any source.

In State ex rel. Metropolitan Life Insurance Co. v. Shain, supra, 334 Mo. 385, 66 S.W.2d 871, 874, the Supreme Court of Missouri, in speaking of the general principles of the law of waiver, quoted the following language: " 'A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing

such purpose, or acts amounting to an estoppel on his part. [Authorities cited.] It has been said that the law of waiver is a "technical doctrine introduced and applied by courts for the purpose of defeating forfeitures." It has also been said that in insurance cases the courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But even in insurance cases the intention to waive must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve some element of estoppel. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N.W. 485, 4 L.R.A.,N.S., 231, 7 Ann. Cas. 1144.' "

With respect to laches that court has said in Hagan v. Lantry, 338 Mo. 161, 174, 89 S.W.2d 522, 529: "A statute of limitations is not here involved, and mere delay on the part of a plaintiff in asserting an equitable claim does not alone or necessarily constitute laches. It must be a delay that works to the disadvantage and prejudice of defendant. Davies v. Keiser, 297 Mo. 1, 246 S.W. 897. In Leslie v. Carter, 240 Mo. 552, 144 S.W. 797, 802, we said: 'Laches is an equitable defense, it is allowed sometimes when the period of limitation prescribed by the statute has not elapsed; but it is never allowed unless the delay has produced such a change in conditions that the defendant is put at disadvantage, and not always then.' * * * Defendants do not point out, nor was any evidence offered tending to show, how or in what manner defendants have been prejudiced or put to disadvantage by reason of the guardian's delay in filing this suit."

See, also, Matthews v. Van Cleve, 282 Mo. 19, 221 S.W. 34; Dillmann v. Davison, Mo.Sup., 239 S.W. 505; Johnson v. Antry, Mo.Sup., 5 S.W.2d 405.

It can not reasonably be said that the short delay which took place between the discovery of the fraud by the insurance company and its notice to the insured of its intention to rescind the reinstatements indicated any intent to relinquish the right to rescind, or constituted laches, and we do not believe that the Supreme Court of Missouri would hold that such a delay constituted either a waiver or laches.

3. The insurance company in its complaint alleged that the policy in suit was issued on June 6, 1924. The appellants in their answers admitted that the policy was issued on that date. In their counterclaim they alleged that it was issued on June 6, 1924, but asserted that the policy was delivered and paid for on September 25, 1924, and went into effect on the latter date. The record shows that the policy was dated June 6, 1924, and was "made in consideration of the payment in advance of the sum of $383.46 * * * constituting the first premium and maintaining this policy to the Sixth day of June, Nineteen Hundred and twenty-five, and of a like sum on said date and every twelve calendar months thereafter until the death of one of the Insured." The policy provided that it was to be effective as of June 6, 1924, "which day is the anniversary of the Policy"; that "after three full years' premiums have been paid, the Insured may, at the end of any insurance [year], or within three months after any default in payment of premium but not later, surrender the policy, and" receive the amount of paid-up insurance which the cash surrender value at the date of default, less any indebtedness, would purchase; that if within three months after default the policy was not surrendered for cash or for paid-up insurance, its cash surrender value at the date of default, less any indebtedness, was to be automatically applied to purchase extended insurance from the date of default for the face of the policy plus dividend additions and less any indebtedness to the company. The applications of the insured, which were attached to and formed a part of the policy, provided that the insurance should not take effect unless and until the policy was delivered to and received by the insured and the first premium paid in full during the insured's lifetime.

The trial court found: "Said policy was delivered to the insured on or about June 16, 1924, and on that date the insured gave to the soliciting agent of the company a note for the first premium on said policy, which said note was paid on September 24, 1924." If this finding is to be sustained, it is of no consequence, so far as this case is concerned, whether this policy became effective as of its date, June 6, 1924, or whether it did not become effective until the day on which it was delivered and the first premium was paid. The policy, by its terms, lapsed for non-payment of premium due June 6, 1932. There was then a sufficient equity in the policy to carry it as extended insurance for a period of 260 days. If the anniversary date for the payment of premium was either June 6 or June 16, 1924, the insurance was not in force at the

time of Joseph Rosenthal's death. If, as the appellants claim, the anniversary date was September 25, the policy was in force on May 14, 1933, the date of death.

The finding of the trial court that delivery and payment were made June 16, 1924, is based upon the testimony of Mary L. Dowd, cashier of the insurance company's commercial branch in St. Louis at the time the application of Joseph and Esther Rosenthal for the policy in suit was made. Miss Dowd identified a card as the record kept in the branch pertaining to the policy. She testified as follows:

"I cannot say whether I made the record myself or not. It was made under my command. It is correct. When an application is applied for and policy issued we kept a record in the commercial branch in 1924, called a policy register and we made a record in that register when the application goes to New York, and when the policy comes back, and any settlement that is received on the policy is recorded in that book whether note or cash.

"On the record before me that payment of the first premium, and the date of the first premium would not be noted as to whether it was paid by cash or not. It would be indirectly. We have every day seven of these sheets, and on the sheets is recorded the exact date the premium is paid and when we post this payment from the sheets into our book we take the date of the sheet, and not the date of payment. The record is made in our registry of notes.

"When a note is given for the first premium, it is recorded on our premium cards in pencil and on our registers in ink. The reason for placing it in pencil on the card is that after the premium is paid, that entry in pencil is removed and the space used for more permanent records.

"Q. Miss Dowd, according to that record, state whether or not a note was given for the first premium on that policy, and if so, the date of the note. A. From what I can see on this premium card, I would say there was a note dated the 16th of June, 1924, accepted in payment of the first premium due June 6, 1924, in connection with this policy.

"Q. Yes. And does, the record show when that note was paid or when a remittance was received by the New York Life Insurance Company for that note? A. This record shows that on September 26, 1924, we reported to our company that we had received the premium on this case; however, it does not give the date that premium was paid, but in all probability—

"Q. Would you state, Miss Dowd, what the entry '9–26–24' under the words 'Date paid', which is the first entry on that, means? What does that signify? A. That signified the date on the sheets that was forwarded to the home office on which this money was reported, and on those sheets you will find the date it was paid."

On cross-examination, Miss Dowd testified that the word "note" did not appear before the pencil notation "6-16-24", and that that was the only pencil notation on the card; that it was recorded on the card "that premium, date paid was September 26, 1924" and that the agent's commission was paid September 26, 1924.

There was no direct evidence as to when the policy in suit was in fact delivered. The agent who wrote the policy testified that he took the application and delivered the policy to Joseph Rosenthal and collected the premium, but that he could not remember when the policy was delivered or whether he took a note or received a check or cash in payment of the first premium.

The Deputy Comptroller of the insurance company produced a card record of the policy kept at the home office in New York, and testified that the first premium was due on June 6, 1924, and, according to the card, was paid; that subsequent premiums from 1924 to 1931, inclusive, were paid; that the premium due June 6, 1924, was paid to the company September 25, 1924; that the policy was given to the agent for delivery upon collection of the first premium; that it is not customary to deliver a policy before the premium is collected; that the agent delivered the premium to the company on September 25, 1924; that he has no knowledge when the policy was delivered or whether the agent collected the premium or what sum he may have taken in settlement of the premium; that the rules of the company are that the agent can only deliver the policy upon the settlement of the premium, meaning "either in cash or the agent may take on his own responsibility some collateral or note otherwise from the insured," in which case the agent becomes responsible for the premium.

In view of this testimony, the appellants contend that the trial court was required to find that the policy was delivered to the insured and the first premium paid on September 25 or 26, 1924, and that the finding which the trial court made as to

the delivery of the policy on June 16 and the payment of the first premium on that date is not sustained by substantial evidence and ought not to be accepted by this Court. It is asserted that Miss Dowd's interpretation of the insurance company's record introduced in evidence is a mere opinion and does not constitute evidence. It is to be noted that no objection was interposed to Miss Dowd's testimony or to the record which she identified, and that the evidence was admitted without objection. That evidence, if believed, justified a finding that a note was given by the insured to the agent of the insurance company on June 16, 1924, in settlement of the first premium. Compare McGinnis v. Aetna Life Insurance Co., Mo.App., 78 S.W.2d 501, 505, 506; Scanlan v. Kansas City, 325 Mo. 125, 28 S.W.2d 84, 95; Phares v. Century Electric Co., 336 Mo. 961, 82 S.W.2d 91, 95. If the insured gave a note on June 16 to the agent of the insurance company for the first premium, it was a fair inference that the policy was delivered on that date, since there would be no purpose in giving a note for the first premium upon an undelivered policy which could not become effective until it was delivered. It seems more probable that the policy was delivered at that time than that it was delivered on September 25 or September 26, when the agent turned in the cash for the first premium. The important date is the date of delivery, since an insured may not postpone the effective date of a delivered policy by delaying payment of the first premium. National City Bank v. Missouri State Life Insurance Co., 332 Mo. 182, 57 S.W.2d 1066, 1069; Tabler v. General American Life Insurance Co., Mo.Sup., 117 S.W.2d 278, 282.

While this Court is not bound by a finding of fact of a trial court in an equity case, it will not disturb such a finding unless it appears that it is clearly against the weight of the evidence or induced by an erroneous view of the law. Johnson v. Umsted, 8 Cir., 64 F.2d 316, 318. We think there is no justification for disturbing the findings of fact of the trial court in this case, and that this Court must therefore proceed on the assumption that this policy was delivered and the first premium paid by the giving of a note to the agent on June 16, 1924.

Assuming, without deciding, that the law in Missouri is that such a policy as the one in suit becomes effective only upon its delivery and the payment of the first premium, and that the anniversary date for the payment of subsequent premiums is to be calculated from the date when the policy first went into effect, the policy in suit lapsed for nonpayment of premiums not later than June 16, 1932, and the 260 days of extended insurance did not keep it in force to the date of the death of Joseph Rosenthal.

The decree of the trial court, modified as directed in our former opinion, is affirmed.